**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DEJUAN L. BRUNSON, KABRINA G. BRUNSON, *Plaintiffs* | § | SA-21-CV-00846-XR |
| -vs- | § | |
| BRUCE J. WILLIAMS, CATHY M. DONDZILLA, RAJINDER SINGH, NEWREZ LLC, *Defendants* | § | |

**ORDER**

On this date, the Court considered the motion to dismiss (ECF No. 13) filed by Defendants Bruce Williams, Cathy Dondzilla, and Rajinder Singh (collectively, the "Individual Defendants") and the motion for summary judgment (ECF No. 18) filed by Defendant NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint"). No response has been filed to either motion, and the time in which to do so has expired. After careful consideration, the Court **GRANTS** both motions.

**BACKGROUND**

Proceeding *pro se*, Plaintiffs DeJuan and Kabrina Brunson filed this suit on September 2, 2021, challenging the validity of a refinancing loan in the amount of $336,875 issued by Amerisave Mortgage Corporation in January 2020, secured by their home in New Braunfels, Texas. *See* ECF No. 1. On March 1, 2020, the servicing of the loan was transferred to Shellpoint. ECF No. 18-1 at 30. The Brunsons allege that they made the first payment due on the loan in March 2020 and each payment thereafter until they "challenged the validity of the alleged debt in August of 2020." ECF No. 1 at 4.

The Brunsons allege that Shellpoint failed to prove the validity of the loan and violated several provisions of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692 *et seq*. *Id.* Specifically, the Brunsons assert that they sent an "affidavit of loan denial" to Shellpoint on August 28, 2020, purporting to request a verification of the debt pursuant to the FDCPA. *See* ECF No. 1 at 4; ECF No. 18-1 at 130, 133–66. The letter consists of a series of "proofs of claim" which the Brunsons state "stand[] as truth" "if not rebutted" "point for point" in writing within seven working days. ECF No. 18 at 133–34. The purpose of the proofs of claim appears to be to obtain Shellpoint's agreement that the Brunsons provided the money which was lent to them, so there is no loan to repay. *Id.* The Brunsons followed up the August 28 letter with letters dated September 24, October 2, and October 9, 2020. *Id.* at 137–39. These letters purport to notify Shellpoint its failure to respond to their August 28 letter confesses a judgment that the loan balance is $0.00, the property is free and clear of any liens and Shellpoint waives all claims, right, immunities and defenses. *Id.* The Brunsons then sent Shellpoint "invoices" demanding payment of $150,000,000. *Id.* at 152, 155–56.

Shellpoint did not respond to the Brunsons' letters in the fashion they demanded, but did mail them a "validation of debt" letter on October 2, 2020. *Id.* at 78–126. Shellpoint's validation letter provided the Brunsons with a copy of the note, the deed of trust, the servicing transfer letter, the last three billing statements, and the payment history, as well as information regarding the status of the loan and the identity of the original and current creditor. *See id.*

In addition to suing Shellpoint, the Brunsons also named Shellpoint's chief executive officer, Mr. Williams, its chief financial officer, Ms. Dondzilla, and its chief risk officer, Mr. Singh as defendants. ECF No. 1 ¶¶ 2–5. Plaintiffs allege that those officers have "a statutory oath to support the Constitution and the Banking Statutes of the United States," specifically, "the

notice of registration of that oath [] listed at Section 9 & 55 of the National Banking Act of 1864 (Public Law 38, Ch. 106, 13 Stat. 99-118.)" *Id.* ¶ 10. They allege that these officers "allowed for direct violations of their oath," including by "extending a mortgage agreement for beyond the prescribed statutory limit," "failing to answer several freedom of information requests," "failing to answer to challenges to the debt," and "transferring a loan after actions and notices of fraud had been made against the transaction in violation of Public Volume 17, 42nd Congress Stat. 13-15 shown as code at 42 USC § 1983 for Actions under Color of Authority or Fraudulent and or illegal transactions." *Id.* ¶ 10. The Brunsons also allege these officers failed to respond to plaintiff's affidavits and "failed to pay the sum of the amount due in reference to certified mail number 7020 1810 0000 3681 4847," *id.* at ¶¶ 12–13, which appears to be an invoice for $150,000,000.00. ECF No. 18-1 at 156. With respect to Mr. Williams only, the Brunsons claim that he "defaulted on his opportunity to cure more than once" and "by his acquiescence and tacit agreement . . . is now in breach of contract for failure to discharge the allege [sic] balance of [Plaintiffs' account]," and "is in violation of 17 USC 501 copyright infringement." *Id.* ¶ 13.

Plaintiffs' original service upon the Individual Defendants by certified mail was defective in two respects. First, the affidavit of service and return receipts indicated that Plaintiff Dejuan Brunson sent process by certified mail. *See* ECF No. 5. However, Texas law does not permit service of process by a person who is a party or interested in the outcome of a suit. TEX. R. CIV. P. 103. Second, the same signature ("JA") appeared on all of the return receipts. *See* ECF No. 5 at 6–9. When a citation is served by certified mail, however, the return receipt must include the signature of the *addressee*. TEX. R. CIV. P. 107(c). Accordingly, on November 5, 2021, the Court ordered Plaintiffs to file proof of service within 30 days indicating that they had properly served the Individual Defendants. ECF No. 8.

On December 13, 2021, the Individual Defendants filed a motion to dismiss for lack of service under Rule 12(b)(5) and for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 13. Specifically, the officers, citizens of Pennsylvania, asserted that Plaintiffs have failed to allege that they have sufficient contacts with Texas to justify the Court's exercise of either general or specific personal jurisdiction. *See id.* Thereafter, Shellpoint moved for summary judgment, arguing, *inter alia*, that is not subject to liability under the FDCPA because it is not a debt collector, is not subject to liability under the National Banking Act ("NBA") because it is not a national bank, and is not subject to liability under 42 U.S.C. § 1983 because it is not a state actor. *See* ECF No. 18. Finally, to the extent Plaintiff DeJuan Brunson seeks to assert a claim for copyright infringement against Shellpoint in addition to Mr. Williams, Shellpoint asserts that the claim fails because it is not based on a valid copyright—Mr. Brunson's own name. *Id.*

On February 1, 2022, while both motions were still pending, Plaintiffs filed a second affidavit of service indicating that on December 15, 2021, a notary placed the service documents in an envelope and sealed it. ECF No. 20 at 7. Then, on January 6, 2022, the documents were sent by some unidentified person to the Individual Defendants via registered mail. They were received on January 14, 2022, but again, the same signature ("JA") appeared on all of the return receipts. *See* ECF No. 20 at 2.

Plaintiffs have not responded to either the motion to dismiss or the motion for summary judgment and the time in which to do so has expired. The Court held a status conference and hearing on the motions on February 24, 2022.

**DISCUSSION**

The Court notes that Plaintiffs are proceeding *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S.

89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Likewise, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995). "The notice afforded by the Rules of Civil Procedure and the local rules" is "'sufficient' to advise a *pro se* party of their burden in opposing a summary judgment motion." *Johnson*, 2017 WL 598499, at *2 (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)). Likewise, "*pro se* status does not exempt [a litigant] from the usual evidentiary requirements of summary judgment." *Id.* (citing *Ellis v. Principi*, 246 F. App'x 867, 869 (5th Cir. Sept. 5, 2007) (per curiam)).

## I. Motion to Dismiss

### A. Legal Standard

There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*[1] Due process requires that the defendant have "minimum contacts" with the forum

[1] Texas's long-arm statute specifically provides that, "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id*.

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Id.* In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

There is a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* at 271. If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Id.*

The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). The relationship must arise out of contacts that

---

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

the *defendant herself creates* with the forum state, not contacts between the plaintiff or third parties and the forum state and not the contacts the defendant makes by interacting with other persons affiliated with the state. *Id.* at 284. Thus, the minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* The plaintiff cannot be the only link between the defendant and the forum. *Id.*

General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19 (1984). The inquiry is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Thus, the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

As the party seeking to invoke the power of the court, Plaintiff "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software*, 688 F.3d at 219–20.

### B. Analysis

The Brunsons plead no facts suggesting any of the Shellpoint officers have general or specific contacts with Texas that would justify this Court's exercise of personal jurisdiction over the Individual Defendants. The few specific facts alleged show only that the Brunsons' loan for their New Braunfels home was acquired by Shellpoint in January 2020, the Brunson made the first payment due in March 2020 and each month thereafter until August 2020, when they challenged the validity of the debt, and Shellpoint has not proven the validity of the debt. ECF No. 1 ¶ 13. Even accepting these allegations as true, they do not speak to any actions by Mr. Williams, Ms. Dondzilla, or Mr. Singh, in general, or any contacts any of those individuals have had with Texas. The only allegations tying Mr. Williams, Ms. Dondzilla, or Mr. Singh to any jurisdiction is that their place of business in located in Pennsylvania. ECF No. 1 ¶¶ 3–5. The Brunsons' allegations do not carry their burden to establish this court's personal jurisdiction over Mr. Williams, Ms. Dondzilla, or Mr. Singh. *Pervasive Software*, 688 F.3d at 219.[2]

## II. Motion for Summary Judgment

### A. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving

[2] Dismissal is also appropriate under Rule 12(b)(5) of the Federal Rules of Civil Procedure, which authorizes dismissal for insufficient service of process. The Court issued an order on November 5, 2021 notifying Plaintiffs of the defects in their first attempt at service and ordering them to file proof of service within 30 days indicating that they had properly served the Individual Defendants. ECF No. 8. In addition to being untimely, Plaintiffs' second attempt at service on January 6, 2022 was deficient because the return receipts did not contain the signatures of the addresses. *See* ECF No. 20; TEX. R. CIV. P. 107(c). Though federal courts often afford unrepresented parties some lenience, they are not excused from serving process. *Stritzinger v. Verizon Corp.*, No. 1:13-CV-682-LY, 2014 WL 12591740, at *1 n.1 (W.D. Tex. Mar. 6, 2014) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F3d. 1011, 1013 (5th Cir. 1990)). Given that the Complaint fails to establish personal jurisdiction over the Individual Defendants, an additional extension of time in which to serve the Individual Defendants would be futile.

party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**B. Analysis**

**1. Plaintiffs' claims under the Fair Debt Collection Act fail as a matter of law because Shellpoint is not a "debt collector."**

The Brunsons allege Shellpoint violated 15 U.S.C. § 1692g by failing to cease collection of the loan and violated 15 U.S.C. § 1692c(b) by disclosing a late payment to the credit reporting agencies after they "challenged the validity of the alleged debt in August 2020." ECF No. 1 ¶ 13. Neither of these provisions apply to Shellpoint because it is not a debt collector. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017); *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (the FDCPA applies only to "debt collectors."). Under the FDCPA, a "debt collector" is "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95–382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698). The undisputed evidence is Shellpoint is the mortgage servicer for this loan. ECF No. 18-1 at 62.

Even if the FDCPA applied to Shellpoint, Shellpoint's response provided the Brunsons "all the verification of the debt that they are entitled to under the FDCPA." *See Thornton v. Hughes*, *Watters & Askanase, LLP*, No. 2:16-CV-66, 2016 WL 8710442, at *10 (S.D. Tex. Oct. 21, 2016), *report and recommendation adopted*, No. 2:16-CV-66, 2016 WL 6775676 (S.D. Tex. Nov. 16, 2016) (copy of the deed of trust, statement showing the principal amount and an explanation of amount due was sufficient verification); *see also Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, No. 4:11–1068, 2011 WL 2606359, at *6 (S.D. Tex. June 30, 2011) (copy

of a deed of trust and payments found to satisfy the verification of debt obligation). The purpose of the verification is "to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Mack v. Progressive Financial Servs., Inc.*, No. 4:13-cv-544, 2015 WL 123742, at *3 (E.D. Tex. Jan. 8, 2015) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999), *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011), and *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)). The Brunsons do not allege that Shellpoint was seeking mortgage payments from the wrong person or that they had already repaid the loan in full. Instead, they merely allege that, by failing to respond to Brunson's letters by the given deadline, Shellpoint and its offers tacitly agreed to the statements in the Brunsons' letters purporting to cancel the debt. Nothing in the FDCPA requires Shellpoint to verify the debt in the manner demanded by the Brunsons.

Finally, as to the Brunsons' claim that Shellpoint violated 1692c(b) by disclosing a late payment to the credit reporting agencies after they "challenged the validity of the alleged debt in August 2020," they rely on a misreading of the provision, which specifically authorizes communications with consumer reporting agencies. *See* 15 U.S.C. § 1692c(b) ("a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency. . . ."). Moreover, the Brunsons have not alleged, and there is no evidence in the record, Shellpoint reported anything inaccurate or in violation of the FDCPA. For the foregoing reasons, Plaintiffs' claims for violations of the FDCPA fails as a matter of law.

**2. Plaintiffs' claim under the National Banking Act fails because Shellpoint is not a national bank.**

Shellpoint is not subject to liability under the NBA because it is not a national banking association, or the financial subsidiary of a national banking association, created under or governed by the NBA. *See* ECF No. 18-1 at 28.

Congress passed the NBA to create a system of national banks "designed to be used to aid the government in the administration of an important branch of public service." *Farmers' & Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 33 (1875). Along with several enumerated powers, the NBA gives national banks "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24. The act was intended to allow national banks to operate "independent . . . of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the states." *Easton v. Iowa*, 188 U.S. 220, 229 (1903) (federal law, not state law, governs national banks).

"The [NBA] regulates only the conduct of national banks." *Wiley v. Fed. Land Bank of Louisville*, 657 F. Supp. 964, 965 (S.D. Ind. 1987); *see also Criswell v. Production Credit Ass'n*, 660 F. Supp. 14, 16 (S.D. Ohio 1985) ("It is well settled that the National Bank Act regulates only the conduct of national banks."); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 687 (E.D. Pa. 1973) ("The National Bank Act, 12 USC § 21 *et seq.*, regulates national banks and only national banks."); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 717 (E.D. N.C. 2002) ("[T]he NBA patently does not apply to non-national banks."). As Shellpoint is not a national bank, the NBA does not govern it and it cannot have violated its provisions. Accordingly, Plaintiffs' claims for violations of the NBA against Shellpoint and its officers—who are not officers of a national bank—fail as a matter of law.

**3. Plaintiffs' § 1983 claim fails because Defendants are not state actors.**

There are two essential elements to a section 1983 action: (1) the conduct of which the plaintiff complains must be committed by a person acting under color of state law; and (2) the conduct complained of must deprive the plaintiff of a right secured by the Constitution or federal statute. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017); *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014). In other words, to prevail on a claim under section 1983, a plaintiff must establish that the defendant violated his constitutional rights while acting under color of state law, *i.e.*, that the defendant was a state actor. *Moody*, 868 F.3d at 351; *Whitley*, 726 F.3d at 638; *see* 42 U.S.C. § 1983. Private conduct does not violate section 1983 unless it is "fairly attributable to the state." *Moody*, 868 F.3d at 352. A private individual's conduct may be "fairly attributable to the state" if he "is involved in a conspiracy or participates in a joint activity with state actors." *Id.* (quoting *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).

Nothing in the records suggests the Brunsons were deprived of a right secured by the constitution and the laws of the United States or that the deprivation occurred under color of state law. Plaintiffs have not alleged any facts suggesting that Shellpoint or any of its officers—private actors—have participated in a joint activity with the state such that Defendants should be considered state actors subject to liability under section 1983. Accordingly, Plaintiffs' claims under 42 U.S.C. § 1983 fail as a matter of law.

**4. Plaintiffs' claim for copyright infringement fails because Mr. Brunson's copyright in his own name is invalid.**

"A copyright infringement claim requires proof of (1) ownership of a valid copyright and (2) actionable copying, which is the copying of constituent elements of the work that are

copyrightable." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003); *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004).

The Brunsons allege that "Williams has . . . failed to cease and desist despite multiple notices and is in violation of 17 USC 501 copyright infringement." ECF No. 1 ¶ 13. They do not identify any copyright they allegedly own or explain when or how it was allegedly infringed. Instead, it appears that this claim is based on a "common law copyright notice" produced by the Brunsons with their initial disclosures. ECF No. 18-1 at 130, 160–61. This document purports to provide notice that Mr. Brunson's name ("as well as any and all derivatives and variations in the spelling") has been copyrighted by common law. *See id.* According to this notice, any person who uses Mr. Brunson's name grants him a security interest in all of the user's property to secure the "sum certain amount of $500,000 per each trade-name/trademark used, per each occurrence of use (violation/infringement), plus triple damages. . . ." *Id.* at 160.

Plaintiffs' claim for copyright infringement fails, however, because "[a]n individual does not have a copyright in his own name." *Monroe v. Beard*, No. CIV-A-05-04937, 2007 WL 2359833, at *3 (E.D. Pa. Aug. 16, 2007) (citing 17 U.S.C. § 102) (stating that copyrights are only available for original works of authorship such as literary, musical, or pictorial works), *aff'd*, 536 F.3d 198 (3d Cir. 2008); *Burleson v. Tex. Dept. of Crim. Justice*, No. 01-17-00565-CV, 2018 WL 5289140, *3 (Tex. App.—Houston [1st Dist.] Oct. 25, 2018, no pet.) ("Courts have consistently held there is no copyright protection for a person's name.") (collecting cases). Accordingly, Defendants are entitled to summary judgment as to Plaintiffs' claim for copyright infringement.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motion to dismiss (ECF No. 13) and Defendant Shellpoint's motion for summary judgment (ECF No. 18) are **GRANTED.**

Defendants are awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will follow.

The Clerk is **DIRECTED** to mail a copy of this Order to Dejuan L. Brunson and Kabrina Brunson, c/o 1950 W. Corporate Way, #21325, Anaheim, CA 92801 and to provide a copy by email to dejuanamarukhan@protonmail.com.

It is so **ORDERED**.

SIGNED this 24th day of February, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE